# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

FERNANDO VARGAS,

     Petitioner,

     v.                                 Case No. 19-CV-92

DAVID G. BETH,[1]
RICARDO WONG,
MATTHEW WHITAKER,
and KIRSTJEN NIELSEN,

     Respondents.

## DECISION AND ORDER ON RESPONDENTS' MOTION TO DISMISS, PETITIONER'S MOTION TO WITHDRAW CLAIM, AND PETITION FOR WRIT OF HABEAS CORPUS

     Fernando Vargas, a citizen of Mexico currently detained at Kenosha County Detention Center ("KCDC") pending removal, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Vargas alleges that his detention violates the Eighth Amendment and the Due Process Clause of the Constitution. He seeks a writ of habeas corpus, declaratory relief, and immediate release with or without bond. Respondents filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons stated below, Respondents' motion to dismiss will be granted in part and denied in part. Petitioner's motion to withdraw Claim Three of his petition will be granted. The petition for a writ of habeas corpus will be granted in part to require an individualized bond hearing within ten (10) days, but otherwise denied.

---

[1] David G. Beth, Kenosha County Sheriff, is substituted for Justin Miller.

# BACKGROUND

Fernando Vargas came to the United States from Mexico in 2002, and was granted legal permanent resident status in 2004. (Docket # 1 ¶¶ 11–12.) In 2005, he pled guilty to unlawful possession of a controlled substance under Illinois law 720 ILCS 570/402(e), for knowingly possessing less than 15 grams of cocaine. (Docket # 7-1 at 8–13.) He was sentenced to twenty-four months of probation, public service, and a fine. (*Id.*)

In April 2018, Vargas traveled to Mexico. (Docket # 1 ¶ 14.) When he returned via Midway International Airport in Chicago, Illinois, Customs and Border Protection deemed him an applicant for admission under 8 U.S.C. § 1182(a)(2). (*Id.*) On June 7, 2018, Vargas was issued a Notice to Appear charging him with removability based on Immigration and Nationality Act ("INA") § 212(a)(2)(A)(i)(II) as an alien convicted of violating a law relating to a controlled substance as defined in the Controlled Substances Act ("CSA") (21 U.S.C. § 802) § 102. (*Id.*) The Notice to Appear ordered Vargas to appear before an immigration judge in Chicago at a date and time to be set. (Docket # 7-1 at 3–5.) Vargas was detained by the Department of Homeland Security pursuant to a warrant for arrest of an alien issued June 7, 2018. (*Id.* at 6.) The Notice of Custody Determination stated that Vargas would be detained pending final administrative determination of his case pursuant to INA § 236 and 8 C.F.R. § 236. (*Id.* at 7.) In proceedings before an immigration judge over six months later, on December 17, 2018, Vargas was ordered removed to Mexico. (Docket # 7-2.) Vargas has appealed the decision to the Board of Immigration Appeals ("BIA"). (Docket # 1 ¶ 28.)

Vargas filed a Form N-400, Application for Naturalization, in August 2018. (Docket # 3 at 9.) USCIS denied his application (Docket # 11-4), but subsequently determined that

the denial was in error, reopened the application, and held Vargas' application in abeyance pending resolution of his removal proceedings (Docket # 11-5).

On January 16, 2019, Vargas filed a petition for a writ of habeas corpus in this court. (Docket # 1.) Vargas argued three grounds for relief: (1) that his detention and classification as an applicant for admission were unlawful, (2) that the order of removal against him was outside the jurisdiction of the immigration court, and (3) that he was entitled to adjudication of his naturalization petition. (*Id.* ¶¶ 21–27.) On February 14, 2019, Respondents filed their return to the habeas petition along with a motion to dismiss. (Docket # 7.) On February 25, 2019, Vargas filed a reply to Respondents' return to the habeas petition (Docket # 12), a response to the motion to dismiss (Docket # 11), and a motion to withdraw his Claim Three (Docket # 11). The fourteen-day deadline under the Civil Local Rules for filing a reply on the motion to dismiss has passed. I now proceed to resolve Respondents' motion to dismiss, Vargas' motion to withdraw a claim, and Vargas' petition for a writ of habeas corpus.

**ANALYSIS**

*1.    Motion to Dismiss*

Vargas has moved to withdraw his naturalization claim, Claim Three. Section 1429 of Title 8 requires that "no application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act." Thus, USCIS may not adjudicate Vargas' application at this time.[2] Vargas' motion will be granted, so only Claims One and Two remain.

---

[2]    An immigration judge may terminate removal proceedings to permit an alien to proceed on a naturalization claim "when the alien has established prima facie eligibility for naturalization and the matter involves exceptionally appealing or humanitarian factors." 8 C.F.R. § 1239.2(f). The BIA requires an affirmative

Respondents argue for dismissal of this action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), or for failure to state a claim on which relief may be granted under Federal Rule of Civil Procedure 12(b)(6). (Docket # 7.)

### 1.1. Rule 12(b)(1): Subject Matter Jurisdiction

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction. For purposes of a motion to dismiss under Rule 12(b)(1), the district court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *See Bultasa Buddhist Temple of Chi. v. Nielsen*, 878 F.3d 570, 573 (7th Cir. 2017); *Scanlan v. Eisenberg*, 669 F.3d 838, 841 (7th Cir. 2012). However, the court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter exists." *Evers v. Astrue*, 536 F.3d 651, 656–57 (7th Cir. 2008).

Respondents argue that this court lacks subject matter jurisdiction over Vargas' claims because Congress took habeas jurisdiction over orders of removal away from federal district courts and gave it exclusively to federal courts of appeals after exhaustion at the administrative level. (Docket # 6 at 2 (citing 8 U.S.C. § 1252(a)(5)).) Respondents admit that this jurisdiction-stripping provision does not preclude habeas review over challenges to detention that are independent of challenges to removal orders, and concede that Vargas does

---

communication from the Department of Homeland Security on eligibility for naturalization before an immigration judge can terminate proceedings. *Matter of Acosta Hidalgo*, 24 I&N Dec. 103, 106 (BIA 2007). Counsel for Vargas apparently sent a letter to USCIS's Chicago Field Office requesting that USCIS confirm his *prima facie* eligibility for naturalization. (Docket # 3-2.) USCIS appears not to have provided such a document. (Docket # 11 at 11–12.) At least one court has concluded that even while removal proceedings are pending, USCIS has jurisdiction to determine an applicant's *prima facie* eligibility for naturalization. *Cuong Quang Le v. McNamee*, No. 06-CV-49-BR, 2006 WL 3004524, at *5–6 (D. Or. Oct. 20, 2006). If USCIS were to exercise its discretion to issue such a determination, Vargas could then apply for discretionary termination of removal proceedings on that basis.

not yet have an administratively final order of removal against him. (*Id.* at 6–7.) However, Respondents argue that the jurisdiction-stripping provision also applies to "indirect challenges" to a final order of removal. (*Id.* at 6.) Respondents argue that because Vargas is presently in removal proceedings, and the issues and arguments in his habeas petition are integral to his removal proceedings, it would be improper to allow parallel proceedings in this forum. (*Id.* at 7–8.) Furthermore, Respondents argue that Vargas' Count Two claim that the immigration court did not have jurisdiction to decide his case is not properly brought in the context of a habeas petition. (*Id.* at 8–9.) Respondents argue that these issues must be raised before the BIA and then appealed to the court of appeals, not raised in this court. (*Id.*)

Vargas responds that this court retains jurisdiction under 28 U.S.C. § 2241 because the jurisdiction-stripping provision applies only to challenges of final orders of removal, which he does not yet have. (Docket # 11 at 5–6.) Vargas explains that Respondents conflate detention with removal, when in fact removal proceedings can and routinely do occur after a detainee is released. (*Id.* at 7.) Vargas insists that he is not challenging removal, but the legality of his detention. (*Id.*) He argues that he has been improperly categorized as an arriving alien and/or applicant for admission, and therefore is being unlawfully subjected to detention without bond. (Docket # 1 ¶ 21–23.) Furthermore, Vargas argues that reading 8 U.S.C. § 1252(a)(5) as stripping the court of jurisdiction to hear the habeas challenge would unconstitutionally deprive him of any adequate forum in which to challenge his detention. (*Id.* at 7–9.) Vargas also responds that the existence of parallel proceedings does not deprive a court of jurisdiction; in fact, courts have an obligation to exercise jurisdiction where Congress grants it. (*Id.* at 9.)

Article 1 of the Constitution states that the "[p]rivilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may

require it." U.S. Const. art. I, § 9, cl. 2. Accordingly, Congress has empowered federal courts to grant writs of habeas corpus to prisoners in custody under the authority of the United States. 28 U.S.C. §§ 2241(a), 2241(c)(1). In the immigration context, Congress narrowed the availability of the writ by requiring that challenges to removal orders be brought only in a court of appeals. 8 U.S.C. § 1252(a)(5). Furthermore, 8 U.S.C. § 1252(g) blocks review in the district court of the Attorney General's decision to commence, adjudicate, or execute removal orders:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

*See Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482 (1999) (explaining the provision's scope is limited to the three named actions—commencement of proceedings, adjudication of cases, and execution of removal orders); *Sharif ex rel. Sharif v. Ashcroft*, 280 F.3d 786, 787 (7th Cir. 2002).

Vargas is currently detained by the Department of Homeland Security, so his case is plainly within the jurisdictional grant of § 2241. To the extent Vargas seeks judicial review of an order of removal, his petition is barred by 8 U.S.C. § 1252(a)(5) and (g). *Padilla v. Gonzalez*, 470 F.3d 1209, 1214 (7th Cir. 2006). However, Vargas' Count One claim is not a challenge to an order of removal. It is a challenge to detention and, specifically, to the denial of an individualized bond hearing. This claim does not ask the court to review any order of removal, and is therefore not barred by 8 U.S.C. § 1252(a)(5).

Respondents argue that this court nevertheless lacks jurisdiction because Vargas' claims are inextricably intertwined with a removal order. (Docket # 7 at 6–11.) Respondents correctly state that a petitioner may not circumvent the jurisdiction-stripping statute by couching his challenge to removal as a challenge to detention. *Ferreyra v. Nielsen*, No. 18-CV-1005, 2018 WL 4496330, at *2–3 (E.D. Wis. Sept. 18, 2018) (no jurisdiction over habeas corpus petition challenging detention due to removal order); *Nino v. Johnson*, No. 16-cv-2876, 2016 WL 6995563 (N.D. Ill. Nov. 30, 2016) ("'An alien cannot evade § 1252(g) by attempting to re-characterize a claim that, at its core, attacks the decision to execute a removal order.'"); *Albarran v. Wong*, 157 F. Supp. 3d 779, 784–85 (N.D. Ill. Jan. 19, 2016), *appeal dismissed* (7th Cir. Apr. 13, 2016) (the court lacked jurisdiction to hear challenges to discretionary denials of requests for stay of removal, rescission of reinstatement order, and release on order of supervision); *Adebayo v. Gonzales*, No. 06 C 1026, 2006 WL 642628, at *1–2 (N.D. Ill. Mar. 7, 2006) (no jurisdiction where petitioner alleged incompetence of his attorney in removal proceedings); *see also Gonzalez-Alarcon v. Macias*, 884 F.3d 1266, 1273–75 (10th Cir. 2018) (claim for release from detention was based on the alleged invalidity of order of removal, and therefore barred); *Martinez v. Napolitano*, 704 F.3d 620, 622–23 (9th Cir. 2012) (claims under the Administrative Procedure Act challenging the BIA's decision to deny application for asylum, withholding of removal, and relief under the Convention Against Torture were inextricably linked to order of removal because the substance of relief petitioner was seeking would negate the order of removal); *Delgado v. Quarantillo*, 643 F.3d 52, 54–56 (2nd Cir. 2011) (request to force adjudication of adjustment of status application was an indirect challenge to removal because adjustment of status would render removal invalid).

However, not all challenges to detention are merely repackaged challenges to removal. The legislative history of the REAL ID Act specifically states that the Act does not "preclude habeas review over challenges to detention that are independent of challenges to removal orders." H.R. REP. 209-72, at 175 (2005) (Conf. Rep.). Indeed, the Supreme Court has cautioned against reading § 1252(g) too broadly to exclude jurisdiction over all matters related to removal:

> The provision applies only to three discrete actions that the Attorney General may take: her "decision or action" to "*commence* proceedings, *adjudicate* cases, or *execute* removal orders." (Emphasis added.) There are of course many other decisions or actions that may be part of the deportation process. . . . It is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings.

*American-Arab Anti-Discrimination Comm.*, 525 U.S. at 482; *see also Nino*, 2016 WL 6995563 at *3–4. In *Jennings v. Rodriguez*, the Supreme Court reiterated that the jurisdiction-stripping provision in § 1252(g) does not "sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves." ___ U.S. ___, 138 S. Ct. 830, 841 (2018) (citing *American-Arab Anti-Discrimination Comm.*, 525 U.S. at 482–83).

In *Jennings,* the Court analyzed its jurisdiction to hear class action claims that immigration detainees—at least one of whom was a legal permanent resident—were entitled to periodic bond hearings while detained pending removal proceedings. 138 S. Ct. at 839–41. The case began as individual habeas petitions in district courts, not challenges to final orders of removal. The Court held that the relevant jurisdictional bar in § 1252 did not apply because the detainees were not asking for review of an order of removal, challenging the decision to detain in the first place or seek removal, or challenging any part of the process by which the

detainees' removability would be determined. *Id.* at 841. The Court thus concluded that it had jurisdiction over the claim. *Id.* Additionally, the Court rejected the argument that § 1226(e), which commits application of § 1226(e) to the unreviewable discretion of the Attorney General, bars judicial review of "challenges [to] the statutory framework that permits [the alien's] detention without bail." *Id.* (citing *Demore v. Kim*, 538 U.S. 510, 516 (2003)); *see also Nielsen v. Preap*, No. 16-1363, slip op. at 7–8 (U.S. Mar. 19, 2019).

While *Jennings* unequivocally cleared the jurisdictional path for alien detainees to challenge their detention via habeas petitions in district courts, this merely reaffirmed the status quo. *See I.N.S. v. St. Cyr*, 533 U.S. 289, 314 (2001) ("[W]e conclude that habeas jurisdiction under § 2241 was not repealed by AEDPA and IIRIRA."); *Gonzalez v. O'Connell*, 355 F.3d 1010, 1014–15 (7th Cir. 2004) (on appeal of grant of habeas petition by district court, court of appeals had subject matter jurisdiction to determine whether mandatory detention pending removal violated due process); *Parra v. Perryman*, 172 F.3d 954, 956–57 (7th Cir. 2002) (subject matter jurisdiction over claims concerning constitutionality of detention during removal proceedings). Among the types of claims courts have suggested fall outside the jurisdiction-stripping provisions of § 1252 are that the agency failed to fulfill its obligations under the INA, that the statute pursuant to which the petitioner is being detained is unconstitutional, that the length of detention is unreasonable and unlawful, and that the conditions of confinement are inhumane. *See Aguilar v. U.S Immigration and Customs Enf't Chicago Field Office*, 346 F. Supp. 3d 1174, 1183–84 (7th Cir. 2018) (jurisdiction where detainees argued failure to meet obligations under the INA and violations of their Fourth and Fifth Amendment rights); *Casas v. Devane,* No. 15-CV-8112, 2015 WL 7293598, at *1 (N.D. Ill. Nov. 19, 2015) (jurisdiction over detainee's challenge to the constitutionality of § 1226(c)

based on good-faith argument against removability); *Papazoglou v. Napolitano*, No. 1:12-cv-00892, 2012 WL 1570778, at *2–3 (N.D. Ill. May 3, 2012) (jurisdiction over claim that thirteen-month detention without bail was unreasonable); *Ayesh v. U.S. Immigration and Customs Enforcement*, No. 08 C 542, 2008 WL 4442633, at *3–4 (N.D. Ill. Sept. 26, 2008) (jurisdiction over claim that detention of U.S. citizen under § 1226(a) was unconstitutional); *Bonsol v. Perryman*, 240 F. Supp. 2d 823, 827 (N.D. Ill. 2003) (jurisdiction over claim that mandatory detention of a lawful permanent resident with a good-faith challenge to deportation violated due process); *Vang v. Ashcroft*, 149 F. Supp. 2d 1027, 1033 (N.D. Ill. 2001) (jurisdiction over due process claims of aliens who contested their removability).

I find that Vargas' Claim One falls in the category of challenges to detention over which this court has jurisdiction. Vargas contends that his detention without bond is unlawful (Docket # 1 ¶¶ 14–17, # 12 at 1–4), which is precisely the sort of collateral issue over which this court retains jurisdiction. The mere fact that this challenge might require the court to analyze a legal argument that will also be material to Vargas' removal proceedings does not alone deprive this court of jurisdiction to hear Vargas' habeas petition.

By contrast, Vargas' Claim Two argument that his detention is unlawful because the immigration court that ordered his removal lacked jurisdiction is precisely the sort of claim that is barred by § 1252(g). Resolution of that claim in Vargas' favor would necessarily amount to an invalidation of his order of removal, and the jurisdiction-stripping provisions of the INA manifestly prohibit this court from granting such relief. *See Adebayo*, 2006 WL 642628 at *2 (finding court lacked jurisdiction over challenge to detention when petitioner argued invalidity of removal order); *Gonzalez-Alarcon*, 884 F.3d at 1273–75. The case Vargas cites in support of his argument, *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), arose via an appeal of a

final order of removal, not via a habeas petition in a district court. Thus, I conclude that this court does not have jurisdiction over Vargas' Claim Two.

Because this court has jurisdiction over Vargas' claim that his detention without bond is unlawful, Respondents' motion to dismiss Claim One under Rule 12(b)(1) fails. However, because this court does not have jurisdiction over Vargas' Claim Two that the order of removal against him is invalid, I will dismiss Claim Two under Rule 12(b)(1).

### 1.2. Rule 12(b)(6): Failure to State a Claim

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must satisfy Rule 8(a) by providing a "short and plain statement of the claim showing that the pleader is entitled to relief . . . in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley vs. Gibson*, 355 U.S. 41, 47 (1957)). Additionally, the allegations must suggest that the plaintiff is entitled to relief beyond the speculative level. *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 777 (7th Cir. 2007). I must construe the complaint "in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from those allegations in his or her favor." *Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003). However, in deciding a motion to dismiss, I am not bound to accept as true legal conclusions couched as facts. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 465 (7th Cir. 2010).

Respondents argue that Vargas is properly subject to detention and therefore his petition should be dismissed. (Docket # 7 at 3–5.) Petitioners argue that arriving aliens are subject to mandatory detention under 8 U.S.C. § 1225(b)(1)(B), subject only to the Attorney General's discretionary parole authority. (*Id.* at 4.) Respondents argue in the alternative that Vargas is subject to mandatory detention under 8 U.S.C. § 1226(c)(1), which mandates

detention of certain criminal and terrorist aliens without bond during removal proceedings. (*Id.* at 4–5.)

Vargas does not dispute that mandatory detention is the legal consequence of being deemed an "arriving alien"; rather, he argues that he is not an "arriving alien." (Docket # 3 at 4–6, # 11 at 10–11.) Vargas contends that his classification as an arriving alien and his detention based on his conviction under 720 ILCS 570/402(c) are unlawful, arbitrary and capricious, an erroneous interpretation of law, and violative of the Eighth Amendment and the Due Process Clause of the Constitution of the United States. (Docket # 1 at 5, 7.) Because it is not apparent from the face of the petition that Vargas is not entitled to relief, I will deny Respondents' motion to dismiss under Rule 12(b)(6).

### 2. Claim One: Unlawful Detention

In his petition and accompanying briefs, Vargas asserts that his continued detention without a bond hearing is an unlawful misapplication of the INA and violates his rights under the Constitution. He asserts that he is a lawful permanent resident, not an arriving alien, and therefore may not be detained without a bond hearing.

### 2.1. Legal Standard

A federal court may grant habeas relief to a detainee who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(a), (c)(3). In determining whether to grant such relief, the court may consider affidavits and documentary evidence such as records from any underlying proceeding. §§ 2246–2247.

Under the Due Process Clause of the Fifth Amendment, the government may not deprive any person of liberty without due process of law. *Reno v. Flores*, 507 U.S. 292, 306 (1993). "'Freedom from imprisonment—from government custody, detention, or other forms

of physical restraint—lies at the heart of the liberty that Clause protects.'" *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). In evaluating a due process claim, the Court must evaluate "the private interest, the probability of error (and the effect of additional safeguards on the rate of error), and the government's interest in dispensing with those safeguards, with a thumb on the scale in favor of the statute's constitutionality." *Parra*, 172 F.3d at 958 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

### 2.2. Immigration Law

In *Jennings*, the Supreme Court succinctly explained the process of admission to and removal from the United States. 138 S. Ct. at 836–38. The Court explained that an alien who "arrives in the United States," or "is present" in this country but "has not been admitted" is treated as "an applicant for admission." 8 U.S.C. § 1225(a)(1). There are two categories of applicants for admission: (1) those aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation, as well as to certain other aliens designated by the Attorney General in his discretion, under § 1225(b)(1); and (2) all applicants for admission not covered by § 1225(b)(1), with specific exceptions, under § 1225(b)(2). Those applicants for admission in the first category, governed by § 1225(b)(1), are normally ordered removed "without further hearing or review" pursuant to an expedited removal process, unless they indicate an intent to apply for asylum or fear of persecution. § 1225(b)(1)(A)(i), (ii). Applicants for admission in the second category, governed by § 1225(b)(2), "shall be detained for a [removal] proceeding" if an immigration officer "determines that [they are] not clearly and beyond a doubt entitled to be admitted" into the country. § 1225(b)(2)(A). Applicants for admission may be temporarily released on parole "for urgent humanitarian

reasons or significant public benefit." § 1182(d)(5)(A); *see also* 8 C.F.R §§ 212.5(b), 235.3 (2017).

The *Jennings* Court also explained that "once inside the United States, aliens do not have an absolute right to remain here." 138 S. Ct. at 837. Such an alien may still be removed if he falls into one or more classes of deportable aliens as described in 8 U.S.C. § 1227(a), including those who have been convicted of certain criminal offenses since admission. *See* 8 U.S.C. §§ 1227(a)(1), (2). Section 1226, which governs the arrest and detention of such aliens pending their removal, sets out a default rule: The Attorney General may issue a warrant for the arrest and detention of an alien "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). As the *Jennings* Court summed up, "U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." 138 U.S.C. at 838. The Attorney General "may release" an alien detained under § 1226 "on bond . . . or conditional parole." 8 U.S.C. § 1226(a)(2). However, Section 1226(c) defines a subset of aliens who may not be released, including those convicted of certain criminal offenses. 8 U.S.C. § 1226(c)(1). *Preap*, No. 16-1363 at 15 ("[S]ubsection (c) is simply a limit on the authority conferred by subsection (a)."). Under § 1226(c)(2), criminal aliens detained under § 1226 may not be released on bond except in narrow circumstances not present here.

### 2.3.   Application

I admit at the outset some confusion about whether Vargas is held pursuant to § 1225(b) or § 1226. Vargas and Respondents largely talk past one another on this point,

14

although both appear to assume that § 1225(b) applies. Respondents' primary argument is that "arriving aliens" are subject to detention under § 1225(b). (Docket # 7 at 3–4.) Vargas spills much ink explaining why he is not an "arriving alien" and therefore not subject to detention under § 1225(b). (Docket # 3 at 4–6, # 11 at 10–11.) I struggle to see how Vargas' classification as an "arriving alien" or the detention provisions of § 1225(b), rather than § 1226(c), are dispositive in this case. *See Jamal A. v. Whitaker*, No. 18-CV-1228 (PJS/BRT), 2019 WL 549722, at *2 (D. Minn. Jan. 22, 2019) ("It is not clear what, if anything, turns on [the dispute whether alien was detained under § 1225(b) or § 1226(c)], at least as a practical matter. . . . [I]n deciding whether an alien's continued detention would violate the Due Process Clause, most courts seem to apply pretty much the same factors."). Detention under either would presumably be based on Vargas' 2005 conviction, and neither contemplates bond hearings for detainees.

In any event, the Notice of Custody Determination provided to Vargas, dated the day he was taken into custody, states that he is detained pursuant to INA § 236 (codified at 8 U.S.C. § 1226). (Docket # 7-1.) For this reason, I will assume that he is held under 8 U.S.C. § 1226 and proceed to analyze whether due process requires a bond hearing in his case.

The Supreme Court has held that brief detention without a bond hearing is constitutional pending removal proceedings. In *Demore*, the Supreme Court resolved a circuit split as to whether the mandatory detention of lawful permanent residents under § 1226(c) was unconstitutional. Rejecting arguments very similar to Vargas' that mandatory detention of lawful permanent residents offended due process, the Court explained that detention pending removal proceedings "necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the

chance that, if ordered removed, the aliens will be successfully removed. . . . Detention during removal proceedings is a constitutionally permissible part of that process." *Id.* at 528–31. Mandatory detention under § 1226(c) has thus been upheld facially and as applied to those who concede removability or who are detained for only brief periods. *Id. See also Hussain v. Mukasey*, 510 F.3d 739, 742 (7th Cir. 2007) (holding that lawful permanent resident alien who challenges the statutory basis for his removability was nevertheless not entitled to release pending judicial review of the removal order, as "judicial review of removal orders takes only a limited amount of time and if there is hardship to the petitioner the court can agree to expedite the proceeding."); *Velez-Lotero v. Achim*, 414 F.3d 776, 782 (7th Cir. 2005) (rejecting facial challenge to constitutionality of mandatory detention without bond of all aggravated felons in deportation proceedings); *Parra*, 172 F.3d at 958 (mandatory detention under § 1226(c) constitutional).

However, indefinite detention "would raise serious constitutional concerns." *Zadvydas*, 533 U.S. at 682 (holding that detention longer than six months in post-removal proceedings was presumptively unreasonable). In *Demore*, the Court explained that "[u]nder § 1226(c), not only does detention have a definite termination point, in the majority of cases it lasts for less than . . . 90 days . . . ." 538 U.S. at 529–31 (finding that detention of six months was "somewhat longer than the average"). In his concurrence in *Demore*, Justice Kennedy noted that "since the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." *Id.* at 532 (Kennedy, J., concurring). In *Jennings*, while the Supreme Court held that mandatory detention under § 1226(c) beyond six months is allowed

as a matter of statutory interpretation, it remanded the case for adjudication of the constitutional due process claims involved in such detention. 138 S. Ct. at 851–52; *see also Preap*, No. 16-1363 at 26 ("Our decision today on the meaning of [§ 1226(c)] does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute as we have now read it.").

Courts in this circuit and across the country regularly grant habeas relief to alien detainees whose mandatory detention without bond pending removal is unconstitutional as applied to them. *See, e.g., Baez-Sanchez v. Kolitwenzew*, No. 2:18-cv-02134, 2018 WL 6729625, at *6 (C.D. Ill. Dec. 21, 2018) (finding that four-year detention violated due process when alien had a good-faith belief that removal might not occur due to pending visa petition) (citing *Misquitta v. Warden Pine Prairie ICE Processing Ctr.*, No. 6:18-CV-01175 SEC P, 2018 WL 6036709, at *4 (W.D. La. Nov. 16, 2018) (collecting cases and noting the wide variety of case-specific factors courts have considered in determining whether a prolonged detention under § 1226(c) is constitutional); *Hernandez v. Decker*, No. 18-CV-5026 (ALC), 2018 WL 3579108, at *10 (S.D.N.Y. July 25, 2018) (collecting cases)). When the length and conditions of detention raise due process concerns, the government must prove that continued detention is necessary to achieve its purposes, i.e. to protect against flight or dangerousness.

Factors courts evaluate to determine whether continued detention without a bond hearing is unconstitutional include (1) the total length of detention to date, including whether the immigration detention exceeds the time the alien spent in prison for the crime that allegedly renders him removable; (2) the likely duration of future detention; (3) the conditions of detention, including whether the facility for civil immigration detention is meaningfully different from a penal institution for criminal detention; (4) whether delays in the removal

proceedings were caused by the detainee or the government; and (5) the likelihood that the removal proceedings will result in a final order of removal, including whether the alien has asserted colorable defenses to removal. *See Jamal A.*, 2019 WL 549722 at *3; *Joseph v. Decker*, No. 18-CV-2640(RA), 2018 WL 6075067, at *10 (S.D.N.Y. Nov. 21, 2018).

As of the date of this order, Vargas has been detained for approximately nine and a half months. On the record before me, no date has been set for the BIA to adjudicate Vargas' appeal of the order of removal and Respondents have not offered even a rough time frame for those proceedings. Vargas' original conviction resulted in no prison time at all, and Vargas is now detained in a county jail. The relevant facts of Vargas' case are not meaningfully distinguishable from other cases in which courts have found that aliens had a due process right to a determination whether continued detention was justified. *See Perez v. Decker*, No. 18-CV-5279, 2018 WL 3991497, at *5–6 (S.D.N.Y. Aug. 20, 2018) (detention longer than nine months "has surpassed the rough six-month threshold at which detentions become less and less reasonable"); *Ahmad v. Whitaker*, No. C18-287-JLR-BAT, *6 (W.D. Wash. Dec. 4, 2018) (detention of nearly a year entitled alien to bond hearing); *Lett v. Decker*, 346 F. Supp. 3d 379, 388 (S.D.N.Y. Oct. 10, 2018) (petitioner entitled to bond hearing when he had been detained nearly ten months and there was reason to believe that detention would continue throughout the course of an appeal); *Brissett v. Decker*, 324 F. Supp. 3d 444, 452 (S.D.N.Y. Aug. 16, 2018) (nine-month detention of legal permanent resident detained in county jail after a "brief and innocuous sojourn outside of the country" unreasonable and entitled petitioner to bond hearing); *Hernandez*, 2018 WL 3579108 at *8–10 (nine-month detention of long-time legal permanent resident was unreasonable and entitled petitioner to bond hearing).

Furthermore, Vargas has asserted a colorable defense to his removal. *Gonzalez v. O'Connell*, 355 F.3d at 1019–20 (while aliens who offer "facially meritless" bases for contesting their removal are not entitled to a bond hearing, "a wholly different case arises when a detainee who has a good-faith challenge to his deportability is mandatorily detained under § 1226(c)"). While this court does not have jurisdiction to determine Vargas' removability, it may determine whether his claim is facially meritless. *See id.* Vargas argues that a conviction under 720 ILCS 570/402(c) is not a categorical match to any offense that would justify inadmissibility or removal under the INA. (Docket # 3 at 4–6, # 12 at 1–7.) The Seventh Circuit appears not to have addressed this issue directly.[3] Thus, Vargas' case is not analogous to *Gonzalez*, in which a Seventh Circuit case directly on point nullified the alien's argument against removability. 355 F.3d at 1020. Vargas' colorable challenge to his removability weighs in favor of his entitlement to a bond hearing. *See Casas*, 2015 WL 7293598, at *2 (detainee's good-faith basis for contesting the statutory basis for his removal entitled him to bond hearing); *Vang*, 149 F. Supp. 2d at 1035 (due process prohibited mandatory detention of aliens who contested their removability and had at least some hope that they would not be removed); *Bonsol*, 240 F. Supp. 2d at 827 (mandatory detention without bond hearing of lawful permanent resident with good-faith challenge to deportation violated due process rights); *see also Preap*, No. 16-1363 at 12 ("Only an alien 'described in [§ 1226(c)(1)] faces mandatory

---

[3] In fact, the Seventh Circuit has ruled that at least one drug-related state statute was not divisible and therefore could not serve as a predicate offense. *United States v. Elder*, 900 F.3d 491, 501–02 (7th Cir. 2018) (Arizona statute applying to "dangerous drug[s]" was not divisible as to type of drug); *see also Mejia Galindo v. Sessions*, 897 F.3d 894, 896 (7th Cir. 2018) (for convictions under Kentucky law, describing categorical and modified categorical approach applied by immigration judge, but dismissing without deciding merits). Looking outside this circuit, while several other circuits have ruled that state drug statues are divisible as to the identity of the controlled substance, *see Swaby v. Yates*, 847 F.3d 62, 68 (1st Cir. 2017); *Singh v. Attorney General*, 839 F.3d 273, 283–84 (3rd Cir. 2016); *United States v. Martinez-Lopez*, 864 F.3d 1034, 1041 (9th Cir. 2017), at least one other circuit has ruled that a particular state drug statute was not divisible, *Harbin v. Sessions*, 860 F.3d 58, 64–68 (2nd Cir. 2017).

detention.'"); *Demore*, 538 U.S. at 578 (Breyer, J., concurring in part and dissenting in part) (Attorney General must detain any alien who "'is deportable,'" "not one who may, or may not, fall into that category").

In these circumstances, due process demands that the government prove that continued detention is necessary to prevent Vargas from flight or danger to the community.

## CONCLUSION

I conclude that this court has subject matter jurisdiction over Vargas' Claim One that his detention without bond is unlawful, but lacks jurisdiction over Vargas' Claim Two that the order of removal against him is invalid. I also conclude that Vargas' petition does state a claim under Rule 12(b)(6). For these reasons, I will grant Respondents' motion to dismiss Claim Two of Vargas' petition, but deny it with respect to Claim One. I will also grant Vargas' motion to withdraw his Claim Three. Respondents shall be required to provide Vargas an individualized bond hearing consistent with this order before an appropriate officer or immigration judge within ten (10) days of this order.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that Respondents' motion to dismiss for lack of subject matter jurisdiction and failure to state a claim (Docket # 7) is **GRANTED IN PART AND DENIED IN PART**;

**IT IS FURTHER ORDERED** that Respondent Justin Miller is dismissed from this action and David G. Beth shall be substituted;

**IT IS FURTHER ORDERED** that Vargas' motion to withdraw his Claim Three (Docket # 11) is **GRANTED**;

**IT IS FURTHER ORDERED** that Vargas' petition for a writ of habeas corpus (Docket # 1) is **GRANTED IN PART AND DENIED IN PART**;

**IT IS FURTHER ORDERED** that an individualized bond hearing for Vargas shall be held before the appropriate officer or immigration judge within ten (10) days of this order;

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**;

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 22nd day of March, 2019.

BY THE COURT:

_s/Nancy Joseph_____
NANCY JOSEPH
United States Magistrate Judge